IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **KENNETH EDWARD LANE** | ) | **CHAPTER 13** |
| | ) | |
| Debtor. | ) | **CASE NO. 11-71402** |

## MEMORANDUM DECISION

The matters before the Court are interrelated and concern a claim filed by the Debtor's former wife and principal unsecured creditor, Vickie Roberts, against the bankruptcy estate, to which the Debtor has objected, and such claimant's objection to confirmation of the Debtor's Chapter 13 Plan dated November 23, 2011 (the "Plan"). For the reasons set forth below, the Court sustains the objection to the former wife's claim but also sustains the latter's objection to confirmation of the Debtor's Plan.[1]

The claim at issue arises out of a final decree of divorce rendered by the Circuit Court of Russell County, Virginia on January 3, 2011 in which that court awarded Ms. Roberts "permanent spousal maintenance and support" in the amount of $1,000 per month[2] and "a lump

---

[1] In addition to the objection filed by Ms. Roberts, the Chapter 13 Trustee also filed an objection to confirmation to the Debtor's original proposed Plan which has not been withdrawn and remains outstanding. The latter objection asserted a number of deficiencies with the original Plan, including a contention that such Plan was not filed in good faith, the same contention made by Ms. Roberts. However, at the confirmation hearing counsel for the Chapter 13 Trustee stated that the Trustee did not object to the Plan on good faith grounds. Because the Chapter 13 Trustee and the Debtor were in agreement at the February 8, 2012 confirmation hearing upon the Debtor's amended Plan that another amended plan would need to be filed, the Court sees no need to address the various grounds asserted in the Trustee's objection and this opinion will deal just with the arguments advanced by Ms. Roberts.

[2] Although it appears to be in the nature of a typographical or other clerical error, by its terms the decree of divorce ordered "that the Plaintiff [i.e., Ms. Roberts] shall pay to the Defendant [i.e., Mr. Lane], as permanent spousal maintenance and support money, the sum of

sum equitable distribution award" in the amount of $85,000. By a subsequent order dated April 7, 2011 that court also awarded Ms. Roberts attorney's fees in the amount of $5,000 to be paid "within 90 days of the entry of this order." Ms. Roberts initially filed a proof of claim in this case in the total amount of $92,662.12, representing the equitable distribution award, interest, and attorney's fees. Priority was claimed for the attorney's fees but the balance was filed as a general unsecured claim. Subsequently she filed an amended claim asserting entitlement to priority for the entire amount on the basis that the equitable distribution award was "in the nature of support." The Debtor objects to the claim of priority for any portion other than the award for attorney's fees and interest thereon.

Ms. Roberts's objection to confirmation sets forth the following grounds: (1) the Plan proposes to bifurcate the amount owed to her, classifying $5,175 as priority debt and the remaining debt as a general unsecured debt; (2) the amount it classifies as a general unsecured debt is based upon a judgment for $85,000, which award and suspended jail sentence$^3$ resulted from the wilful disobedience of a previous court order for the Debtor to maintain payments on certain obligations and the subsequent perpetration of a fraud on the state court by producing falsified documents to cover his wrongdoing; and (3) the debt is in the nature of support and is entitled to priority status. In addition to these grounds or perhaps in sharpening their intent, at the confirmation

---

$1,000.00 per month . . . until the Defendant's remarriage or the death of either party." The opinion letter dated September 1, 2010 directed "the husband to pay the wife $1,000.00 per month for her support and maintenance, effective July 1, 2010." This Court further understands that Virginia law does not permit an award of alimony against the innocent party in favor of a spouse determined to have been at fault in the dissolution of the marriage, which was the determination made against Mr. Lane by the Circuit Court.

$^3$ According to the objection, the jail sentence was suspended on the condition that the Debtor pay the total sum awarded to Ms. Roberts for his wrongful acts.

hearing held on February 8, 2012 counsel for Ms. Roberts also denied that the Chapter 13 Plan was proposed in good faith, citing the decision of *In re Green*, 2010 Bankr. LEXIS 319, 2010 WL 396253 (Bankr. E.D. Va. Jan. 27, 2010).

Obtaining a full understanding of the nature of the dispute between the Debtor and Ms. Roberts requires a review of the electrical contracting business operated by Mr. Lane known as Southwest Electric Company which the Circuit Court of Russell County determined to be marital property within the meaning of applicable Virginia law. This business was operated from certain real property owned jointly by Mr. Lane and Ms. Roberts. This real property was ultimately foreclosed upon by the mortgagee and there were approximately $35,000 in net proceeds from the foreclosure after the secured party was paid in full and the foreclosure expenses were paid. Under the terms of the divorce decree entered by the Circuit Court of Russell County, these proceeds were directed to be used to pay certain withholding tax liabilities owed by the parties. Whether that actually occurred is uncertain from the evidence before the Court, however, as no accounting was provided showing the application of the net proceeds. That uncertainty becomes important for the determination of the confirmation of the Debtor's Chapter 13 Plan because such plan provides that $34,299.62 of tax liabilities owing to the United States and the Commonwealth of Virginia be paid as priority expenses entitled to payment in full before payment of general unsecured claims against the bankruptcy estate.

The filed schedules in this case disclose assets valued at $2,406.88 and liabilities of $410,902.53.[4] The listed assets include a 51% ownership of Brite Electric Company Inc., an

---

[4] The Debtor's schedules list a total of $176,202.69 of unsecured nonpriority claims on Schedule F, made up by the following debts: $11,000.00 to "Bright" Electric Company for a personal loan, $37,354.48 to New Peoples Bank for a personal loan upon which Ms. Roberts is

3

entity to which the assets of Southwest Electric Company Inc. were transferred. This ownership interest was scheduled at a value of $1.00. The following claims have been filed against the Chapter 13 bankruptcy estate: a claim by the IRS in the amount of $27,621.76; FIA Card Services, N.A. in the amount of $1,623.43; three separate secured claims of Ally Financial, Inc. in the amounts of $42,800.61, $20,975.34 and $20,646.26; a secured claim of BB&T in the amount of $46,614.48; Chase Bank USA, transferred to Portfolio Recovery Associates, LLC, in the amount of $371.46; Virginia Department of Taxation in the amount of $9,543.63; and the aforementioned claim of Ms. Roberts.

The secured claims filed by Ally Financial (formerly GMAC) and BB&T are deserving of special mention. Each of these four claims involved a separate truck purchased by and for Brite Electric in late 2010 and early 2011 upon which the Debtor was obligated as a co-maker or guarantor. The first proof of claim filed by Ally relates to a 2011 Chevrolet Tahoe that was purchased on December 7, 2010 for $52,695.85. The contract indicates that a 2008 Hummer

---

indicated to be a co-debtor, attorney fees of $5,000.00 to Robert Galumbeck, Ms. Roberts's divorce counsel, $37,668.21 to Virginia Electric Supply for a charge account upon which Ms. Roberts is indicated to be a co-debtor, and $85,000 to Vickie Roberts for property settlement/equitable distribution; $200,400.22 of secured debt on amended Schedule D, composed of six obligations to Ally Financial and one to BB&T for various motor vehicles all, save only one, indicated to be owned by a "co-debtor" ("Bright" Electric); and $34,299.62 of unsecured priority tax debts owing to the IRS and the Commonwealth of Virginia on Schedule E. Schedule D fails to disclose the dates of the transactions from which the debts owing to Ally Financial and BB&T arise but the vehicles in question are all indicated to be either 2010 or 2011 models. The one motor vehicle not indicated to be owned by a co-debtor, a 2010 model Chevrolet Silverado financed by Ally Financial, is something of a mystery. Apparently Mr. Lane is the sole obligor on the financing for that truck, but it is not listed on Schedule B, so it is not indicated to belong to him and there is no indication in the Debtor's amended Statement of Financial Affairs that he had previously owned the vehicle but had transferred it to someone else within the two year period preceding the bankruptcy filing. Ally Financial did not file a proof of claim with respect to this obligation or indeed for two other vehicles which Schedule D represents that it financed but has not filed a motion for relief from the automatic stay.

that was worth less than the payoff was traded in and that a cash downpayment of $9,441.63 was made, leaving an amount financed of $45,642.83, which was to be paid in 72 monthly payments of $795.84.  Ally's second proof of claim relates to a 2011 Chevrolet Express 1500 that was purchased on February 8, 2011 for $27,555.48.  The contract indicates that a 2005 Ford Econoline truck was traded in with no cash downpayment being made, leaving an amount financed of $22,080.73, which was to be paid in 60 monthly payments of $446.22.  The third proof of claim filed by Ally relates to a 2010 Chevrolet Silverado that was also purchased on February 8, 2011 for $30,313.82.  This contract indicates that a 2007 Chevy Silverado was traded in with no additional cash downpayment being made, leaving an amount financed of $21,734.31, which was to be paid in 60 monthly payments of $439.22.  BB&T's proof of claim relates to a 2011 Chevrolet Silverado, which was purchased on February 18, 2011 for $55,449.64.  The contract indicates that a 2009 Chevrolet Silverado was traded in with no cash downpayment being made, leaving an amount financed of $50,357.48, which was to be paid in 60 monthly payments of $1,068.46.  Ally Financial filed motions for relief for only three of the trucks it financed.  These motions were not responded to by the Debtor and default orders granting relief upon them were entered on August 15, 2011.  Each of those orders provided that Ally would be barred from any deficiency claim if it did not file an amended claim within 120 days from the date of the order.  No amended proof of claim has been filed with respect to any of these claims although more than 120 days have elapsed since August 15, 2011.  BB&T has not filed any motion for relief with respect to the truck purchase which it financed.  The failure of BB&T to file such a motion and the failure of Ally Financial to file any deficiency claims suggests, although it certainly does not establish, that Brite Electric has continued to make the

payments due upon the four trucks in question.

The Plan proposed by the Debtor provides for the payment of $1,341.53 per month for 55 months,[5] with general unsecured creditors receiving a distribution of approximately 27% of their claims. The Plan provides for the payment of the following priority debts: $26,715.99 to the IRS to be paid $197.73 over 60 months; $7,583.63 to the Va. Dept. of Taxation to be paid $126.40 over 60 months; and $5,175 to Vickie Roberts to be paid $109.58 over 60 months with 6% interest. According to the Plan, the Debtor will surrender a Tahoe, a van and four Chevy Silverados to Ally Financial and a Chevy Silverado to BB&T.

This Court will now examine the state court litigation between the parties. According to a letter decision dated September 1, 2010 [Exhibit 1], Ms. Roberts filed a complaint for divorce against Mr. Lane in the Circuit Court of Russell County, Virginia on December 4, 2007 alleging adultery on his part. That court on November 23, 2009 entered an "Order for Temporary Injunction" which prohibited either party "pending further hearing on December 22, 2009" from encumbering or disposing of any property "which may be subject to equitable distribution . . . including, without limitation, the property . . . of Southwest Electric Company, Inc." That order further required the party in possession of equitable distribution property to make the payments due upon any indebtedness secured by such property and specifically ordered Mr. Lane to make the "payments on the promissory note secured by the property . . . of Southwest Electric Company, Inc." [Exhibit A]. The evidence does not disclose what happened at the December 22nd hearing, but on January 3, 2011 the Circuit Court of Russell

---

[5] Paragraph 1 of the Plan lists payments for 55 months with a total of $73,784.15 being paid into the plan, however the claims being paid in paragraph 2B are to be paid over 60 months. The prior June 2011 plan that was denied confirmation was a 60 month plan.

County awarded a divorce to the complainant upon the ground of adultery. Among other provisions, the final decree of divorce [Exhibit 2] provided that any funds to which the parties were entitled as a result of the foreclosure sale of the Southwest Electric property "shall be applied on the parties' tax liability," that Mr. Lane would own as his separate property any interest in the Southwest Electric property, that he would be "solely responsible for the payment of the indebtedness of the said business," that he "shall indemnify and hold [Ms. Roberts] harmless from any and all liability upon the aforementioned debts," and that he pay her "a lump sum equitable distribution award" of $85,000. In addition, as previously noted and discussed at footnote # 2 of this decision, the court undertook to award Ms. Roberts spousal support in the amount of $1,000 per month. The decree further determined that Mr. Lane was in contempt of the court for his violation of the court order dated November 23, 2009 for which it sentenced him to serve twelve months in the regional jail, "the execution of which is suspended upon the condition that the Defendant strictly comply with the orders made herein." It also incorporated by reference the Circuit Court's "findings . . . set out in the opinion letter of [the] Court, dated the 23rd day of June, 2010," which the parties agree is in error as the Circuit Court's only indicated opinion letter is one dated September 1, 2010, which was admitted into evidence in this Court as Exhibit 1. By a subsequent order entered April 7, 2011 the Circuit Court also awarded $5,000 attorney's fee to Ms. Roberts from the Debtor which the latter was ordered to pay within ninety days. [Exhibit 3].

   According to the Circuit Court's opinion letter dated September 1, 2010, Mr. Lane transferred significant assets of Southwest Electric to Brite Electric "with the intent to deprive the wife of her marital share." That court made express findings that Mr. Lane had

"testified untruthfully and provided fabricated receipts to the Court regarding work performed and claimed as business expenses, and purchases made" and that his testimony "lacks credibility." In addition to vehicles, tools, equipment, and inventory, Southwest Electric further transferred approximately $150,000 to Brite. Not surprisingly the Circuit Court expressly ruled that Mr. Lane would be "solely responsible for all debts, including tax liens, incurred by the company [i.e., Southwest Electric]." That opinion letter also noted other "marital" property which Mr. Lane attempted to put beyond his wife's reach, consisting of a "Javelin" boat worth $9,000 which "was traded in by the husband on a new Triton boat that is apparently now titled in the name of husband's girlfriend," a Honda Shadow motorcycle valued at $4,200 "purchased with funds from Brite Electric," and a Harley Davidson motorcycle valued at $15,000 which "was originally purchased by the husband and was quickly 'sold' to the husband's girlfriend." [Exhibit 1, ¶ II(B)(1-3)]. The Debtor's original Statement of Financial Affairs ("SOFA") filed in this case on June 30, 2011 did not disclose the transfers of the boat and the Harley Davidson, but on November 1, 2011, after the section 341 meeting of creditors, the Debtor filed an amended SOFA which did reveal them.

CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Allowance or disallowance of claims against a bankruptcy estate and determination of whether a Chapter 13 Plan ought to be confirmed are "core" bankruptcy matters pursuant to 28 U.S.C. § 157(b)(2)(B) and (L), respectively.

BANKRUPTCY STATUS OF EQUITABLE DISTRIBUTION AWARD

The Circuit Court of Russell County awarded alimony, counsel fees and an equitable distribution judgment against Mr. Lane.  It further held him in contempt of court for his violation of its order "to make payments due on the Southwest Electric property and [not to dispose] of marital property without court approval."  [Exhibit 1, ¶ VI].  It specifically directed that the net proceeds from the foreclosure of the Southwest Electric property "shall be paid to the IRS on tax debts owed by the parties."  [Exhibit 1, ¶ III(4)].  Furthermore, in its decree of divorce it ruled that "[Mr. Lane] shall indemnify and hold [Ms. Roberts] harmless from any and all liability upon the [Southwest Electric] debts."  [Exhibit 2, ¶ E].   This determination by that court was made after Mr. Lane had flouted the court's earlier order concerning payment of the loan payments on the Southwest Electric property and transfer of equitable distribution property without the approval of the court.  Nevertheless, that court clearly made two principal types of awards to Ms. Roberts:  recurring support in the amount of $1,000 per month and a lump sum amount of $85,000 as compensation for his deprivation of her marital interest under applicable Virginia law in the assets of Southwest Electric.  It seems clear that the lump sum award was intended to and did represent a division of property acquired during the marriage and that it was not "in the nature of alimony, support or maintenance" as would have been necessary for it to be classed as a "domestic support obligation" as defined in § 101(14A) of the Bankruptcy Code.  Accordingly, the Debtor's objection to the proof of claim filed on behalf of Ms. Roberts to the extent that it claims priority for the $85,000 equitable distribution award is well taken and will be sustained.  *Accord, In re Green*, 2010 Bankr. LEXIS 319 at *7, n.6, 2010 WL 396253 at *2,

n.6.

OBJECTION TO CONFIRMATION

It is clear that a Chapter 13 debtor bears the burden of proof to establish that his or her proposed plan complies with the requirements set forth in 11 U.S.C. § 1325(a). This Court has previously ruled to that effect. *In re Brown*, 244 B.R. 603, 609 (Bankr. W.D. Va. 2000); *In re Sauter*, No. 08-72050, slip op. at 6-7 (Bankr. W.D. Va. Feb. 11, 2009); *In re Jennings*, No. 05-73129, slip op. at 7 (Bankr. W.D. Va. Apr. 27, 2006); *see also* Hon. Barry Russell, *Bankruptcy Evidence Manual* § 301.76 (2011 ed.). Among those requirements are § 1325(a)(3) that "the plan has been proposed in good faith" and § 1325(a)(7) that "the action of the debtor in filing the petition was in good faith." If no objection to confirmation is filed, the court need not require evidence "that the plan has been proposed in good faith and not by any means forbidden by law."[6] Because divorce cases frequently become bitter contests, it is not surprising that domestic obligation debtors often seek to deal with the monetary claims of their domestic obligation creditors in bankruptcy. Even less surprising is the indignation of the creditor former spouse when the debtor spouse undertakes to diminish by the bankruptcy process the latter's financial obligation to the former, as is the case here. In this case the Debtor's good faith has been challenged by both the Chapter 13 Trustee and Ms. Roberts.

A 2010 decision by Judge Mitchell (now retired) of the Bankruptcy Court for the Eastern District of Virginia on this general subject has been helpful to this Court, as is ever the case with his opinions. That decision, *In re Green*, which has been cited by both parties, likewise

---

[6] Rule 3015(f) of the Federal Rules of Bankruptcy Procedure.

involved a challenge to a Chapter 13 debtor's good faith towards a former spouse in a proposed Plan which sought to treat an equitable distribution award as a general unsecured debt and to satisfy it by a payment of approximately 21% of the amount of such award. Judge Mitchell reviewed applicable Fourth Circuit precedent and applied it to the facts before him as follows:

> The Fourth Circuit has held that the test for evaluating the good faith of a plan that provides no or only minimal payment of unsecured claims is totality of the circumstances. *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982). A non-exclusive list of relevant factors includes "the percentage of proposed repayment, . . . the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." *Id.* at 972. Additionally, the use of chapter 13 to compromise a claim that would not be dischargeable in chapter 7, while not by itself a sufficient basis for finding bad faith, is nevertheless a relevant factor to be considered. *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir. 1986). The last factor is particularly relevant to the present case, because an equitable distribution award is non-dischargeable in a chapter 7 but is dischargeable in chapter 13. §§ 523(a)(15) and 1328(a)(2), Bankruptcy Code; *In re Uzaldin*, 418 B.R. 166, 171-72 (Bankr. E.D. Va. 2009).
>
> In the present case, the debtor's financial situation would support a need for chapter 13 relief. Although his mortgage payments were current and he was able to pay his household expenses, he testified that he had fallen behind on his credit card payments and did not have the ability to pay the equitable distribution award. He is paying into the plan his entire disposable income for the maximum five-year period that chapter 13 permits. The percentage payment, although relatively low at 21%, is nevertheless not insignificant. Although the equitable distribution claim– which represents slightly over 80% of the unsecured debt dealt with by the plan– would be non-dischargeable in a chapter 7 case, that fact alone does not compel a finding of bad faith. Put another way, a debtor in financial distress does not act in bad faith in simply taking advantage of a benefit Congress has chosen to provide.
>
> There is, however, an additional factor, which is the unexplained increase in the balance on the home equity line of credit

11

> from $75,041 to $139,000 in the 19 months from entry of the divorce decree to the filing of the bankruptcy case. . . . What is disturbing . . . is that the nearly $64,000 increase in the amount taken out on the home equity line of credit is $20,000 more than the amount the debtor was required to pay Ms. Green. Since the debtor testified that he was current on the mortgages against the property, there is no apparent reason why he could not have paid the equitable distribution award from the advances taken on the line of credit. Had the advances resulted from some financial emergency or had they been used for some purpose that appeared productive at the time, a different issue might be presented. Here, however, the debtor has provided no explanation whatsoever to account for the advances taken against the line of credit. Unwise financial decisions, standing alone, will not necessarily equate to bad faith. A great many debtors, after all, find themselves in bankruptcy as a result of bad financial decisions. But a complete failure to provide any accounting, when coupled with the relatively low dividend being paid and the fact that the largest debt would be non-dischargeable in chapter 7, tips the balance in this case against a finding of good faith.

2010 Bankr. LEXIS 319 at *6 - 10, 2010 WL 396253 at *2 - 3. It is worth pointing out that the decisive factor in Judge Mitchell's analysis was pre-filing conduct by the debtor in increasing the credit line against the residential property and using the funds thereby advanced, for purposes other than satisfying the equitable distribution award in the wife's favor without providing any accounting or other satisfactory explanation for having done so. In short, the burden was upon the debtor to provide an appropriate justification, not upon the objecting former spouse to prove that the advanced funds had been used for a wrongful purpose.

The Court concludes in this case that the Debtor has not met his burden of proof to establish good faith in the Plan presently before the Court for confirmation for the following reasons:

1. Ms. Roberts testified at the confirmation hearing that the net proceeds from the foreclosure sale had been used to pay first the expenses of the sale and that the balance had been

applied to the tax liability. The Court has no reason to doubt her belief that such was the case and most probably that understanding is correct. Nevertheless, it is a common experience that persons often believe things to be true but later turn out to be not true. The proof of claim filed by the IRS in this case does not contain any information about any pre-filing payments which reduced the liability. In dealing with a matter of such great importance to the parties the Court prefers to be provided direct evidence rather than belief or hearsay that the net proceeds resulting from the foreclosure of the Southwest Electric property were in fact used to pay down the tax liability owing to the IRS, as was ordered by the Circuit Court of Russell County, and that the IRS claim in this case represents the remaining balance of its claim owing after application of the entire net proceeds to that liability.

2. The Debtor admitted at the confirmation hearing that he had not made any attempt subsequent to the judgment of the state court in the divorce case to try and negotiate with his former wife, Ms. Roberts, some mutually agreeable resolution of the equitable distribution award made by such court before filing this case or the Plan presently before the Court, although he did testify that he made an attempt to reach a settlement prior to the state court's ruling.

3. The failure of Ally Financial to file any deficiency claims with respect to the three contracts upon which it obtained relief from the automatic stay, its failure to file proofs of claim with respect to the three other contracts noted in Schedule D upon which the Debtor is purportedly liable, and the failure of BB&T to file a motion for relief with respect to the transaction which it financed upon which Brite Electric is indicated to be a co-debtor, considered together and in the absence of any evidence to the contrary, suggest to the Court that Brite (or other vehicle owner) may well be continuing to make the contractual payments due upon such

obligations. While there may be nothing wrong with that, if such be the case, it implies that the Debtor, perhaps indirectly, is managing to continue making the payments due on these contracts which may provide a future benefit to him by the continued use and enjoyment of the vehicles which were acquired by virtue of the financing provided by such lenders. In short, vehicles purportedly surrendered in the bankruptcy case may not have been surrendered in fact. Such a situation might also call into question the actual necessity of filing this case.

    4. Upon the evidence presently before the Court, it appears that the course of conduct engaged in by the Debtor before he sought the protection of bankruptcy demonstrated a single-minded effort to avoid to the extent possible, and minimize to the extent that it could not be entirely avoided, by whatever means might be effective, his former wife's marital interest in the property acquired during the course of their marriage, especially but not limited to her interest in the assets of Southwest Electric. While the Court accepts the premise that by the time the Debtor filed his bankruptcy petition he was in financial distress, upon the facts recounted in Judge Moore's September 1, 2010 opinion letter that circumstance calls to mind the apocryphal story of the young man who was convicted of killing his parents and then implored the court to have mercy on him because he was an orphan. The evidence so far produced in support of confirmation is insufficient to persuade the Court that the Debtor's current Chapter 13 Plan represents his sincere effort to meet to the best of his ability his divorce obligations to Ms. Roberts rather than simply the latest effort by the Debtor to attain his pre-bankruptcy objective.

    5. A critical consideration in the analysis of the situation presented in this case is that the state court, in addition to the other relief awarded to Ms. Roberts, ordered the husband to hold the wife harmless from indebtedness associated with Southwest Electric. The alimony awarded by

the state court could be rendered of little benefit to Ms. Roberts if creditors having joint claims against both parties could pursue her for collection of those claims while being left with general unsecured claims against the Chapter 13 bankruptcy estate with regard to their claims against the Debtor.  For two painstaking reviews of bankruptcy treatment of indemnification obligations arising out of separation agreements or court decrees, see generally *In re Johnson*, 397 B.R. 289, 297-98 (Bankr. M.D.N.C. 2008) and *In re Pagels*, 2011 Bankr. LEXIS 560 at *15 - 54, 2011 WL 577337 at *5 - 16 (Bankr. E.D. Va. Feb. 9, 2011).  While it is true that the obligation to pay a joint company debt is one which is associated with the division of marital property, namely, Southwest Electric, rather than a debt specifically related to an obligation related to support, such as mortgage payments upon a residence occupied by the creditor spouse, the Court nevertheless in the unusual circumstances presented here concludes that such obligation should be treated as one in the nature of support.  It appears to the Court that the transfer of the assets of Southwest Electric to Brite Electric contravened the rights of both Ms. Roberts and Southwest's unpaid trade supplier.  Judge Moore's opinion letter recited that the parties had sold their marital residence prior to the filing of the bankruptcy case, so Ms. Roberts did not end up with a place to live as a part of the divorce process, but she did receive an award of spousal support which would assist her in providing for herself a decent place to live after she was on her own.  As previously noted in footnote # 4, two of the largest unsecured obligations listed by the Debtor in Schedule F, specifically a debt of $37,354.48 to New Peoples Bank and a debt in the amount of $37,668.21 to Virginia Electric Supply for a charge account, the latter almost certainly being a debt of Southwest Electric, are both for obligations upon which Ms. Roberts is indicated to be a co-debtor.  No claim has been filed for either of these obligations.  If they are correctly scheduled,

Ms. Roberts may well face the real prospect of collection activities by either or both of these creditors against her individually with Mr. Lane's direct liability for them being discharged by his completion of a confirmed Chapter 13 Plan. If the cash contained in the Southwest Electric account had been utilized to pay that company's debts, including tax obligations, instead of being transferred to Brite, Ms. Roberts would not be faced with the prospect in this case of having the tax liabilities (and the attorney's fee award which is of course for her benefit) paid off the top and then sharing the residue of the Debtor's Plan payments with other allowed unsecured claims. For these reasons the Court concludes that it is appropriate to treat the indemnification obligation with respect to any debt of Southwest Electric for which Ms. Roberts is jointly liable and which should have been paid before that company's assets were transferred to the Debtor's new business entity, as in the nature of a support obligation. To do otherwise would in effect reward the Debtor for his reckless disregard of the lawful orders of the Circuit Court of Russell County.

  6. The Debtor's ownership interest in Brite Electric is scheduled as having a value of $1.00. Without clear evidence of (a) the assets and liabilities of that company beyond simply the Debtor's testimony that it has a negative value, and (b) what happened to the large amount of cash which the Circuit Court of Russell County found was transferred to it from the account of Southwest Electric, or a stipulation from the parties in interest, the Court will be unpersuaded that the Debtor is doing all reasonably within his power to satisfy, rather than simply escape, his obligations to Ms. Roberts. If the Court were so persuaded, such a finding would go a long way towards supporting a finding of good faith in proposing a plan which might still fall short of paying to Ms. Roberts the entire amount of her equitable distribution award.

    To summarize, the Court in this case will not, over the creditor's objection,

confirm a Chapter 13 Plan which fails to protect Ms. Roberts and hold her harmless from liability for debts of Southwest Electric, whether in the nature of taxes or otherwise, and which fails to persuade it by a preponderance of the evidence that the Debtor is making all efforts reasonably within his power to pay the obligations imposed upon him by the Circuit Court of Russell County. To the extent that the net proceeds from the foreclosure sale were used for any purpose other than satisfying the tax liability owing to the IRS, the Plan must assure that Ms. Roberts will not be prejudiced by the diversion of net proceeds to some purpose other than payment of the IRS tax debt. The Court will sustain the objection to confirmation interposed by Ms. Roberts.

An Order in accordance with the above decision will be entered contemporaneously herewith.

This 2nd day of March, 2012.

_____
UNITED STATES BANKRUPTCY JUDGE